U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL - 9 2012

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JOHN MICHAEL ALLEN,                §
                                   §
          Plaintiff,               §
                                   §
VS.                                §   NO. 4:11-CV-157-A
                                   §
MICHAEL J. ASTRUE,                 §
COMMISSIONER OF SOCIAL             §
SECURITY,                          §
                                   §
          Defendant.               §

MEMORANDUM OPINION
and
ORDER

Before the court is the complaint of plaintiff, John Michael
Allen, seeking judicial review of the decision of Michael J.
Astrue, Commissioner of Social Security, ("Commissioner") denying
his claim for disability insurance benefits under Title II of the
Social Security Act ("Act").   The court has concluded that
Commissioner's decision should be affirmed.

I.

Background

The administrative law judge ("ALJ") decided on January 26,
2010, that "[b]ased on the application for a period of disability
and disability insurance benefits filed on February 7, 2008, the
claimant is not disabled under sections 216(i) and 223(d) of the
Social Security Act."   R. at 83.   When the appeals council denied
plaintiff's request for review on November 24, 2010, the January

26, 2010 decision of the ALJ became the final decision of Commissioner.

Plaintiff instituted this action on March 10, 2011, complaining of Commissioner's decision.  The matter was referred to the United States magistrate judge for proposed findings and conclusions and a recommendation for disposition.  The magistrate judge ordered that plaintiff's complaint be treated as an appeal from Commissioner's decision, and fixed a timetable for the filing of briefs.  Both sides timely filed briefs.  On March 2, 2012, the magistrate judge issued his proposed findings and conclusions and his recommendation ("FC&R") that the decision of Commissioner be reversed and remanded "for further administrative proceedings consistent with [the magistrate judge's] proposed findings of fact and conclusions of law."  FC&R at 16.  Although neither party filed objections, Commissioner complied with an order to file a response to the FC&R.

II.

Positions Taken by the Parties, and the FC&R

A.   Plaintiff's Brief

Plaintiff originally filed his brief on July 29, 2011, and then filed a corrected brief on August 4, 2011.[1]  Plaintiff

---

[1]References in this memorandum opinion to plaintiff's brief will always be to the corrected brief.

2

defined the Issues Presented as follows:

    A.    The ALJ failed to apply the appropriate legal standard at Step 2 in finding [plaintiff's] mental disorders not "severe."

    B.    The ALJ's Step 4 finding that [plaintiff] retains the residual functional capacity ("RFC") to perform his past work as a dispatcher is unsupported by substantial evidence.

    C.    The ALJ improperly denied [plaintiff's] request for a supplemental hearing.

Pl.'s Br. at 1. For ease of reference, the A. issue is referred to herein as the "First Issue," the B. issue as the "Second Issue," and the C. issue as the "Third Issue." The references by plaintiff to "Step 2" and "Step 4" are to the steps the ALJ was required by regulation to take in the making of his disability determination. See infra at 11-12.

Plaintiff's argument in support of the First Issue was that the ALJ failed to apply the standard mandated by the Fifth Circuit in Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), at step two of his analysis in evaluating whether plaintiff's complaints of stress, anxiety, and depression were a severe impairment.[2]

---

[2] The standard set forth in Stone v. Heckler is: "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d 1099, 1101 (5th Cir.1985) (internal citations, quotation marks, and brackets omitted).

In support of the Second Issue, plaintiff argued that the
ALJ did not consider the effects of his stress, anxiety, and
depression on functioning when assessing his RFC at step four of
the ALJ's analysis.  The argument includes complaints that (1)
the ALJ erred in failing to give a precise description of
particular job duties which were likely to produce tension and
anxiety as part of a determination of whether plaintiff's current
mental impairment is compatible with the performance of his past
work, (2) the ALJ failed to apply the appropriate legal standard
in assessing plaintiff's mental RFC, (3) the ALJ failed to make a
finding of fact as part of his step four analysis as to whether
plaintiff retained the ability to meet the mental demands of his
past work, and (4) the ALJ's step four finding that plaintiff had
the RFC to perform his past work as a dispatcher is unsupported
by substantial evidence.

In support of his Third Issue, plaintiff argued that the ALJ
failed to follow appropriate legal standards governing whether
plaintiff should receive, upon request, a supplemental hearing at
which new post-hearing evidence could be considered.

B.   Commissioner's Response

In his responsive brief, Commissioner argued that the ALJ's
analysis of severe impairments was proper.  Commissioner added in
his response to plaintiff's First Issue argument that even if

Stone had not been properly applied as to a mental impairment at step two, such a failure was harmless because the ALJ, having found that plaintiff had several conditions that constituted a severe impairment, went past step two to step four when reaching his denial decision. Commissioner also argued that the record does not contain evidence that required the ALJ to find that plaintiff had a mental impairment, much less a mental impairment that was a severe impairment.

Commissioner argued in response to the Second Issue that the ALJ correctly determined that plaintiff had no medically determinable mental impairment, and that there was substantial evidence for the implied finding by the ALJ that whatever stress, anxiety, and depression plaintiff might have suffered from time to time did not preclude him from performing his past relevant work as a dispatcher.

In response to plaintiff's Third Issue, Commissioner argued that plaintiff's request for a supplemental hearing was moot, considering that the request had as its purpose hearing from a vocational expert to clarify if plaintiff would be disabled at step five, a step that the ALJ did not reach after having denied benefits based on his finding at step four that plaintiff was capable of performing his past relevant work as a dispatcher.

C.   <u>Plaintiff's Reply Brief</u>

Plaintiff opened his reply with arguments that the ALJ (1) failed properly to consider the evidence of plaintiff's mental impairment in arriving at plaintiff's RFC and (2) failed to follow the required procedure for the evaluation of mental impairment.  Then followed a lengthy argument that the ALJ did not apply the <u>Stone</u> standard at step two of his evaluation, and that, for that reason alone, Commissioner's denial of benefits should be reversed.

Finally, plaintiff argued that his request for a supplemental hearing was not moot because he should have been afforded an opportunity to show that the information provided by the post-hearing consultive examiner is inconsistent with a finding that plaintiff had the capacity to perform past relevant work.

D.   <u>FC&R</u>

After first considering plaintiff's Third Issue (which the magistrate judge treated as the first issue) concerning denial of plaintiff's request for a supplemental hearing, the magistrate judge proposed a conclusion that plaintiff was not prejudiced by the ALJ's refusal to hold a supplemental hearing, with the consequence that the refusal should not form the basis for a reversal of Commissioner's denial of benefits.

Rather than to discuss and then make proposed findings and conclusions on plaintiff's First and Second Issues (which the magistrate judge refers to as plaintiff's second and third issues), the magistrate judge elected to devote most of the FC&R to a discussion of an issue not raised by plaintiff, explaining:

> [Plaintiff] frames his issue as whether the ALJ applied the proper severity standard in evaluating his claimed mental impairment, but the issue before the Court is different because the ALJ determined that [plaintiff] did not suffer from any mental impairment at all.
>
> .  .  .  .
>
> Here, because the ALJ found that [plaintiff] did not have a medically determinable mental impairment, the ALJ did not proceed to evaluate the severity of his mental impairment using the technique [described in 20 C.F.R. 404.1520a(a)]. The actual issue, then, is whether the ALJ's finding that [plaintiff] did not have a medically determinable mental impairment is supported by substantial evidence.

FC&R at 9.

In the course of his discussion on those subjects, the magistrate judge made reference to the items of evidence in the record before the ALJ in which mention was made of complaints by plaintiff of stress, anxiety, or depression and the responses by healthcare providers to those complaints. The magistrate judge concluded that the ALJ's finding that there was "no medically determinable mental impairment supported by a review of the case record," R. at 76, was not supported by substantial evidence.

7

Based on that conclusion, the magistrate judge recommended that Commissioner's decision be reversed and the matter remanded for further administrative proceedings consistent with his proposed findings of fact and conclusions of law.

The magistrate judge elected not to make proposed findings and conclusions on the precise points presented by plaintiff's First and Second Issues.

E.   Commissioner's Response to the FC&R

Commissioner responded that the court should affirm Commissioner's decision denying plaintiff's claim and should reject the magistrate judge's recommendation that there be a reversal and remand.  Commissioner noted that when plaintiff made his claim for disability he made no mention of any mental impairment, such as stress, anxiety, or depression, and that, instead, his claim was that he had disabling exertional limitations due to physical conditions.  Secondly, Commissioner argued that the ALJ's decision discloses that he fully and fairly considered the evidence in the record before him, including evidence concerning plaintiff's complaints of stress, anxiety, or depression.  And, Commissioner observed that, while plaintiff had the burden to prove that he was disabled and to furnish evidence of functional limitations that prevented him from performing any substantial gainful activity, he furnished no such evidence,

including no evidence of any disabling mental condition.
Commissioner pointed out that the fact that the ALJ did not
discuss every piece of evidence is not to be taken as proof that
he did not consider the entire record.

III.

Analysis

A.   Nature and Standard of Review

A guiding principle is that judicial review of a decision of
Commissioner of nondisability is limited to two inquiries: (1)
whether Commissioner's decision is supported by substantial
evidence on the record as a whole and (2) whether Commissioner
applied the proper legal standards.  See Anthony v. Sullivan, 954
F.2d 289, 292 (5th Cir. 1992).  Substantial evidence is more than
a scintilla but less than a preponderance; it is "such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion." Ripley v. Chater, 67 F.3d 552, 555 (5th Cir.
1995); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).
There will not be a finding of "no substantial evidence" unless
"there is a conspicuous absence of credible choices." Harrell v.
Brown, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam).

The determination of whether there is substantial evidence
to support the fact findings of Commissioner does not involve
reweighing the evidence, or trying the issues de novo. Ripley,

9

67 F.3d at 555.  The court cannot substitute its own judgment for that of Commissioner.  Neal v. Bowen, 829 F.2d 528, 530 (5th Cir. 1987) (per curiam); Chaparro v. Bowen, 815 F.2d 1008, 1010 (5th Cir. 1987) (per curiam); Milam v. Bowen, 782 F.2d 1284, 1286 (5th Cir. 1986).  Commissioner, not the court, has the duty to weigh the evidence, resolve material conflicts in the evidence, and make credibility choices.  Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991) (per curiam); Carry v. Heckler, 750 F.2d 479, 482 (5th Cir. 1985).  The court's role is to "scrutinize the record in its entirety to determine whether substantial evidence supports" Commissioner's findings.  Randall v. Sullivan, 956 F.2d 105, 109 (5th Cir. 1992) (citing Ransom v. Heckler, 715 F.2d 989, 992 (5th Cir. 1983) (per curiam).  If supported by substantial evidence, Commissioner's findings are deemed conclusive, and the court must accept them.  See Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971).  "The role of the courts in this quintessentially administrative process is extremely narrow and Commissioner's decision is entitled to great deference." Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995); Lewis v. Weinberger, 515 F.2d 584, 586 (5th Cir. 1975).

Also basic is the claimant's burden of proof, as the Fifth Circuit reminded in Hames v. Heckler:

> It must be remembered that an individual claiming disability insurance benefits under the Social Security Act has the burden of proving her disability.  To meet her burden and establish disability under the Act, Plaintiff must prove that she is unable to engage in any substantial gainful activity.  Plaintiff must also establish a physical impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity.

707 F.2d 162, 165 (5th Cir. 1983) (per curiam) (citations omitted).  See also Mays v. Bowen, 837 F.2d at 1364; Shearer v. Astrue, 2008 WL 5136949, at *3, No. 4:07-CV-552-A (N.D. Tex. Dec. 5, 2008).

B.    The Five-Step Evaluation Process

The five-step evaluation process Commissioner must use to determine whether a claimant is disabled is explained at 20 C.F.R. § 404.1520.  First, the claimant must not be presently working at any substantial gainful activity, id. § 404.1520(b); second, the claimant must have an impairment or combination of impairments that qualify as a severe impairment, id. § 404.1520(c); third, the claimant's impairment(s) must meet or equal an impairment listed in appendix 1 to the regulations, id. § 404.1520(d); or, fourth, the claimant's impairment(s) must prevent the claimant from doing his past relevant work, id. § 404.1520(f); and fifth, the claimant's impairment(s) must prevent

him from doing any work, considering the claimant's residual
functional capacity, age, education, and past work experience,
id. § 404.1520(g). At steps one through four, the burden of
proof rests upon the claimant to show he is disabled. Crowley v.
Apfel, 197 F.3d 194, 198 (5th Cir. 1999). If there is a
determination at the fourth step, as there was in the instant
case, that the claimant's impairment does not prevent the
claimant from doing his past relevant work, the decision will be
made at step four that the claimant is not disabled, and the
evaluation will not go beyond the fourth step. 20 C.F.R.
§ 404.1520(a)(4).

C.   All Three of Plaintiff's Issues Are to Be Resolved in
     Favor of Commissioner

     1.   The First Issue

     The decision of the ALJ shows on its face that plaintiff is
incorrect in his assertion that the ALJ failed to apply the Stone
standard at step two. The ALJ adopted language used by the Fifth
Circuit in articulating the Stone standard, and expressly said
that "[a]ll impairments have been considered under the standard
set forth in Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985)."
R. at 76. The fact that the ALJ correctly described at an
earlier point in his decision the language of the regulations
governing determination of severity, R. at 74, does not detract

from the pointed language of the ALJ that he, in fact, made his step two decision based on the <u>Stone</u> standard.

Moreover, Commissioner is correct in his contention that even if the <u>Stone</u> standard had not been properly applied by the ALJ, the error would have been harmless, considering that the ALJ did not decide the case at step two but, instead, found at step two that plaintiff had impairments that qualified as severe impairments, and went beyond step two to reach a decision of nondisability at step four. The court has confronted the issue under discussion on several occasions during the last year or so. <u>See, e.g.</u>, <u>Jones v. Astrue</u>, No, 4:11-CV-053-A, ___ F. Supp. 2d ___, 2012 WL 1085528, at *5-7 (N.D. Tex. Mar. 20, 2012). There is no reason why the court should reevaluate its rulings on the issue.

    2.   <u>The Second Issue</u>

Plaintiff contends through his Second Issue that the ALJ's step four finding that plaintiff retained the RFC to perform his past relevant work as a dispatcher is unsupported by substantial evidence. He weaves into his argument on that issue a contention that the ALJ failed to consider the effects of stress, anxiety, or depression on functioning when assessing plaintiff's RFC at step four. Pl.'s Br. at 8.

The court has concluded that there is no fair reading of the decision of the ALJ that would support a contention that the ALJ did not consider the entire record, including the hearing testimony and the medical records mentioning plaintiff's complaints of stress, anxiety, or depression, in reaching his step four decision of nondisability.  There is no reason to think that the ALJ was not being truthful when he said that his finding of "no medically determinable mental impairment" was based on "his review of the case record."[3]  R. at 76.  The ALJ's detailed description of what he considered to be relevant parts of the record discloses that he studied the record in some detail, and gave effect to those parts of the record that were pertinent. There is no requirement that the ALJ reference everything in the administrative record that he took into account in his decision. See Wilson v. Astrue, 602 F.3d 1136, 1148 (10th Cir. 2010).

The ALJ's decision provides affirmative evidence, in addition to "his review of the case record" comment mentioned above, that the ALJ took plaintiff's complaints of emotional conditions into account in his analysis and decision.  He took specific note of plaintiff's hearing testimony that he quit a job

---

[3]See Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009) (taking the word of the ALJ that he considered all the evidence); Hamilton v. Sec. of Health & Human Servs., 961 F.2d 1495, 1498-99 (10th Cir. 1992) (accepting at face value the ALJ's statement that he considered all of the evidence). See also Wilburn v. Astrue, 626 F.3d 999, 1003-04 (8th Cir. 2010) (presuming that the ALJ properly discharged his official duties, including a review of the record).

working as a dispatcher in October 2007 "because of the stress of working too many hours, including being on call one weekend per month," and explained that he would take plaintiff's testimony into consideration "in connection with evaluating the credibility of [plaintiff's] subjective symptoms." R. at 75-76. The ALJ mentioned that "[t]he only reference to a mental impairment for the relative period is [plaintiff's] admission in April 2009 that [plaintiff] was no longer taking any psychotropic medication." R. at 76. He gave significance to the fact that "no treating or examining physician ever referred [plaintiff] to a mental health professional since his date of alleged onset." Id. And, the ALJ noted plaintiff's complaints of inability to get along with customers and of anxiety and panic. R. at 77. He said that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." R. at 79. Also, the ALJ found that "while the objective record as a whole is not consistent with [plaintiff's] subjective complaints and allegations, it is supportive of and consistent with an individual who can meet the demands of light work." R. at 80. A review of the ALJ's decision discloses that he conscientiously considered the entire record, made appropriate credibility evaluations, and based his decision of nondisability on the

15

entire record.   In the final analysis, the ALJ appropriately
concluded that plaintiff had not carried his burden of proof at
step four of the five-step analysis.

Mentions in the medical records of complaints by plaintiff
of stress, anxiety, or depression were notations made by
healthcare providers of plaintiff's subjective complaints related
to particular situations facing plaintiff at the time he
expressed those complaints, none of which were relevant to the
issue of whether plaintiff had the RFC to perform the functions
of a dispatcher.   An example are the entries in Dr. Lum's records
pertaining to plaintiff's November 1, 2008 visit to him when
plaintiff complained of emotional stress related to his medical
conditions.   R. at 437-38.   When evaluating the significance of
Dr. Lum's November 1, 2008 entries, as well as the entries Dr.
Lum made pertaining to his December 27, 2008 visit with plaintiff
when plaintiff complained of stress and depression, R. at 673-74,
the ALJ was entitled to consider, and undoubtedly did consider,
the records of Dr. Lum's visits with plaintiff during the two
months before November 1, 2008, when plaintiff made no mention of
any emotional condition.[4]   R. at 439-42.   The ALJ undoubtedly

---

[4]The record of plaintiff's September 4, 2008 visit with Dr. Lum contains an extensive history of
plaintiff's problems, which concludes with the words "[h]e reports feels he in good health today, and
feels that he has not experienced any sequelae that he can notice (neurologically or in activity level) since
his CVA." R. at 441. The record of that same visit under the heading "Review of Systems" shows
(continued...)

considered as well the assessment made on July 11, 2008, by
Marvin H. Cohn, M.D., in which no mention was made of anything
other than physical impairments.  R. at 429-36.  Noteworthy, Dr.
Cohn's assessment was made after he reviewed records of prior
care and treatment of plaintiff.  R. at 436.

The ALJ was required to consider in his analysis the
regulation that defines what is needed to show an impairment,
which includes the requirement that the "impairment must result
from anatomical, physiological, or psychological abnormalities
which can be shown by medically acceptable clinical and
laboratory diagnostic techniques" and that "[a] physical or
mental impairment must be established by medical evidence
consisting of signs, symptoms, and laboratory findings, not only
[the claimant's] statement of symptoms."  20 C.F.R. § 404.1508.[5]
See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001)
(noting that "[s]ubjective complaints of pain must be
corroborated by objective medical evidence."); Houston v.

---

[4](...continued)
negative as to "Neuro" and "Psychiatric." Id. So far as the court can determine, there is no mention in
any of the records pertaining to plaintiff's visits with Dr. Lum in September and October 2008 of
anything that would remotely suggest that plaintiff was complaining of, or diagnosed as having, any
emotional or mental problem. R. at 439-42.

[5]Title 20 C.F.R. § 404.1508 is consistent with the statutory directive that a "physical or mental
impairment" in a Social Security disability context is "an impairment that results from anatomical,
physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical
and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989) (holding that a Social Security claimant's "objective complaints must be corroborated at least in part by objective medical testimony."); Harrell v. Bowen, 862 F.2d 471, 481-82 (5th Cir. 1988) (after noting that there was insufficient documentation to support a contention that there was a psychological component to the Social Security claimant's pain, the court rejected the claimant's argument, observing that "[t]here is no evidence of any functional restriction resulting from a mental impairment in any of the medical reports" and that "[i]n the absence of a medically determinable mental impairment, the Secretary is not required to consider the effects of such an impairment on the claimant's work capacity." (emphasis in original)).  As was true with Dr. Lum's November 1, 2008 and December 27, 2008 entries of plaintiff's complaints of stress, all mentions of anxiety, stress, or depression in the medical records simply are notations of plaintiff's subjective complaints, none of which had any corroboration in the record by objective medical evidence.

Plaintiff's February 2008 application for benefits provides additional evidentiary support for the ALJ's finding that plaintiff's mentions of anxiety, stress, or depression did not constitute proof of a mental impairment.  No mention or complaint of any impairment related to his emotional state is made in the

18

application.   In the section providing information about his medical records, plaintiff said that he had been seen by healthcare providers for illnesses, injuries, or conditions that limited his ability to work, R. at 174, and he then gave a listing of each such healthcare provider and of his reasons for visiting each; but, in no instance did he make any mention of seeking care for any emotional problem or complaint, R. at 174-77.   Tellingly, plaintiff answered "No" to the question asking "[h]ave you been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems that limit your ability to work?"   R. at 174.   His listing of medications did not include any medication for an emotional problem.   R. at 176.   While plaintiff did mention in his March 10, 2008 Work History Report that stress was a factor involved in his work as a dispatcher,[6]

---

[6]Plaintiff gave the following testimony at his June 29, 2009 hearing before the ALJ that provided an explanation for his perception of stress related to his work as a dispatcher:

> A        And I took a week off and went back to work and worked about two more weeks.  And the company I was working for -- I was salaried -- told me that the eleven-hour a day, five-day a week work week wasn't all that I was required to do -- that one weekend a month from Friday through Saturday I would be on call 24/7 from Friday evening until Sunday evening with a cell phone.
> Q.        Uh-huh.
> A.        And that was just more than I could bear and I told them I could not do that and resigned.
> Q.        Why couldn't you do that?
> A.        The stress involved.

R. at 38.  Thus, plaintiff's only complaint of stress related to the dispatcher work was in the context of a highly unusual proposed work schedule.  The just-quoted testimony of plaintiff undoubtedly was considered by the ALJ as bearing on plaintiff's later testimony that he concluded that his temperament with customers was stress-related.  R. at 46.

R. at 186, the record also contained a vocational analysis
worksheet dated July 8, 2008, that failed to show any limitation
in mental residual functional capacity, R. at 187.

The ALJ was entitled to take into account in his fact
finding the objective observations and conclusions of others, and
to weigh them against plaintiff's subjective complaints.  In this
regard, the ALJ noted that "[a]lthough the documentary record
establishes an underlying medical condition capable of producing
some pain and limitations in function, the substantial evidence
fails to corroborate the degree of restrictions and limitations
as alleged by the claimant."  R. at 79.  In the course of his
evaluation, the ALJ quite appropriately considered the entry in
Dr. Lum's record of his April 7, 2009 visit with plaintiff, under
the heading "History of Present Illness":  "Depression--no longer
taking Citalopram.  OK now.  Retired.  Not as stressed."  R. at
667.  The ALJ was entitled to weigh that entry against the
statements made by plaintiff to Dr. Robert A. Harris, Jr., during
the disability examination conducted by Dr. Harris on July 31,
2009, when plaintiff reported that he had a stroke in March 2006,
and that "[s]ince then he has had poor short-term memory" and
"feels he does not deal with stress as well as he did prior to

his stroke." R. at 780.[7] Plaintiff conceded to Dr. Harris that
"he might be able to perform a sedentary job but only for several
hours per day." R. at 782. Dr. Harris did not include an
emotional or mental condition in the diagnoses he made on July
31, 2009. R. at 781-82.

The ALJ was entitled, as he did, to discount plaintiff's
subjective complaints of stress, anxiety, and depression, and to
make his finding relative to mental impairment based on the
overall picture projected by the entire record. Nothing in the
record supports plaintiff's argument that the ALJ did not
consider the effects of his stress, anxiety, and depression on
functioning when assessing plaintiffs RFC at step 4 of the
analysis. The text of the ALJ's decision, and the presumption
that attached to his fact findings and the processes through
which he reached those findings,[8] persuade the court that
plaintiff's arguments in support of his Second Issue are without
merit and that the record contains substantial evidence
supporting the ALJ's finding relative to existence, <u>vel non</u>, of a
medically determinable mental impairment.

---

[7]This is the same record in which the entry was made that plaintiff was taking Celexa in July
2009. R. at 780.

[8]There is a legal presumption that the ALJ properly discharged his official duties and made an
appropriate review of the record. See Wilburn v Astrue, 626 F.3d 999, 1003-04 (8th Cir. 2010).

Plaintiff has lost sight of the basic principle that this court's review of a decision of Commissioner of nondisability is limited to the inquiries of whether (1) Commissioner's decision is supported by substantial evidence on the record as a whole and (2) Commissioner applied the proper legal standards.  No plausible argument can be made that Commissioner's decision relative to the existence, <u>vel non</u>, of a disabling mental impairment is not supported by substantial evidence in the record as a whole, nor is there any reasonable basis for a contention that Commissioner failed to apply the proper legal standards in reaching his ultimate determination of nondisability at step four.  Therefore, the court concludes that plaintiff's arguments in support of his Second Issue are without merit.

3.   <u>The Third Issue</u>

The magistrate judge gave full consideration to plaintiff's Third Issue complaining of the ALJ's denial of plaintiff's request for a supplemental hearing.  The court is satisfied with the magistrate judge's proposed findings and conclusions on that issue, and here approves and adopts those findings and conclusions.

D.   **The Court Rejects the Magistrate Judge's Recommendation That Commissioner's Decision Be Reversed**

The court has concluded that the magistrate judge's reasoning and analysis that led to his conclusion that there should be a reversal and remand have basically the same infirmities as some of the arguments advanced by plaintiff in support of his Second Issue, which the court already has discussed in section III.C.2. above.  Thus, the court rejects the recommendation.

E.   **Commissioner's Decision Should be Affirmed**

For the reasons given above, none of the three issues presented by plaintiff in support of his request for reversal of Commissioner's decision has merit.

## IV.

### Order

Therefore,

The court ORDERS that the decision of Commissioner that, based on the application for a period of disability and disability insurance benefits filed by plaintiff in February

2008, plaintiff is not disabled under sections 216(i) and 223(d)

of the Social Security Act be, and is hereby, affirmed.

SIGNED July __9__, 2012.

JOHN McBRYDE
United States District Judge